## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Barnabas A. Yohannes, | Case No. 21-cv-620 (PJS/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Minnesota IT Services ("MNIT"), | |
| Defendant. | |

---

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 46) ("Motion to Amend"). The Court held a hearing on the Motion to Amend on June 2, 2022, after the parties' unsuccessful attempts at settling this case. For the reasons stated below, the Motion to Amend is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Operative Complaint

Plaintiff Barnabas A. Yohannes ("Plaintiff" or "Yohannes") alleges in relevant part in the operative Complaint as follows: Plaintiff is a resident of Minnesota. (Dkt. 1 ¶ 11.) He is an African American and is originally from Eritrea. (*Id.*) Defendant Minnesota IT Services ("Defendant" or "MNIT") is the governing body of all information technology related services of all Minnesota agencies. (*Id.* ¶ 12.) Yohannes has been employed on and off by MNIT as an Information Technologist ("IT") at varying levels. (*Id.* ¶ 13.) Most recently, Plaintiff was hired on February 28, 2019 at an ITS4 position, and placed at the Office of Higher Education ("OHE"), where he continues to

work.  (*Id.*)  Yohannes replaced an individual at an ITS5 position.  (*Id.* ¶ 226.)  Yohannes is currently the only programmer that is an ITS4.  (*Id.* ¶ 258.)

Since he was hired at OHE, there have been three positions that Plaintiff was qualified for, however, because he is Black, he was not even considered for any of these positions.  (*Id.* ¶ 269.)  In May 2020, Yohannes' supervisor, Rich Westgard, hired a Caucasian to an ITS5 position without opening the position for competition.  (*Id.* ¶¶ 253-56.)  In his 2021 annual review, Yohannes wrote, "I believe, my Position Description (ITS4) doesn't match my work.  I believe, I've been a Full Stack Application Developer for over 10 years.  Therefore, my Position Description should have been ITS5."  (*Id.* ¶ 270.)  Westgard scheduled and canceled Yohannes' annual review about five times and he asserted that he would schedule it later, but, as of the date Yohannes filed the operative Complaint, "never did."  (*Id.* ¶ 270.)

Yohannes filed an administrative charge with the Equal Employment and Employment Commission ("EEOC") on February 16, 2021.  (Dkt. 12-3 at 3; Dkt. 50-1 at 1.)  Yohannes checked three boxes on the charge form: one for race discrimination, one for national-origin discrimination, and one for retaliation. (*Id.*)  In support of his charge, Yohannes asserted the following basis for his claims:

> I believe [MNIT] subjected me to differential treatment when I was held to different standards than employees outside my protected classes and was denied advancement opportunities.  I complained about employment discrimination and believe I was retaliated against for prior complaints.
>
> I believe I have been discriminated against on the basis of my race, black; national origin, Eritrea; and retaliated against for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*  Plaintiff stated that the dates the discrimination and retaliation took place were

January 1, 2020 through February 16, 2021, and that this was a "continuing action."  (*Id.*)

The EEOC issued a right-to-sue letter on February 24, 2021, and Yohannes filed

the present lawsuit on March 3, 2021, asserting a claim under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e, *et. seq.*, for employment

discrimination on the basis of race, color, and national origin.  (Dkts. 1 & 1-1.)

## B.      Motion to Dismiss

MNIT filed a Motion to Dismiss Plaintiff's Complaint.  (Dkt. 8.)  On August 10,

2021, Chief United States District Judge Patrick J. Schiltz dismissed all of Plaintiff's

claims except for his Title VII claims that he was discriminated against based on his race

and national origin when he was denied the opportunity to apply for a promotion in the

spring of 2020 and when he was denied a timely annual review—at which he would be

evaluated for such a promotion—in 2021.  (Dkt. 27.)

## C.      Proposed Amendments

Turning to Plaintiff's Motion to Amend, Plaintiff failed to file a redline proposed

amended complaint as required by the Local Rules for the District of Minnesota.  *See* D.

Minn. LR 15.1(b).  As best as this Court can discern, apart from the similar facts alleged

in the original Complaint (even after the removal of some of the previous allegations), the

proposed amended complaint adds allegations in pertinent part that Westgard provided

Plaintiff with a negative annual review sometime after September 2021, and blamed him

for the inadequacies of other employees as pretext to get him fired; Plaintiff was being

told that the work he performed was basic or that it could be done by a high school

3

student; Plaintiff was a whistleblower with respect to "wasteful spending"; and Plaintiff's programs were intentionally sabotaged by a co-worker as a pretext to fire him.  (Dkt. 46-1 ¶¶ 85-88, 90-91, 122-26, 131-34.)  Along with the Title VII claim under 42 U.S.C. §§ 2000e, Plaintiff has listed a number of additional causes of action in his proposed amended complaint: a claim under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et. seq. ("ADEA"), for employment discrimination on the basis of age; a claim under 42 U.S.C. § 1981; a claim under the Minnesota Human Rights; a claim under the "Minnesota Fair Pay Act"; a claim under the Minnesota Whistleblower Act; and a claim under 18 U.S.C. § 216(b).  (Dkt. 46-1 at 2-3.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g.*, *Niagara of Wisc. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute right to amend."  *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371

4

U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.").  "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended [pleading] could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended [pleading] states a cause of action under the *Twombly* pleading standard . . . ." *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.").

On a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable inferences arising therefrom, most favorably to the pleader.  *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.  Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*,

364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).  While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record,[1] orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.  *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18CV02863 (DWF/ECW), 2020 WL 5229677, at *7 (D. Minn. Sept. 2, 2020) (applying the same standard to a motion to amend under Rule 15) (citing *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)) (citations omitted).

With these standards in mind, the Court turns to Plaintiff's Motion to Amend.

## III.   ANALYSIS

### A.   Age Discrimination in Employment Act Claim

Defendant argues that the Motion to Amend with respect to Plaintiff's proposed ADEA claim should be denied as futile because: (1) Plaintiff failed to exhaust

---

[1]     The Court notes that an EEOC charge is part of the public record and may be considered as part of the Court's analysis as to Plaintiff's Motion to Amend.  *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss.").

administrative remedies for his ADEA claim; and (2) because Plaintiff has failed to plead sufficient facts to support such a claim. (Dkt. 49 at 6-9.) The Court will address these arguments in turn.

### 1.      Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (citing *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (8th Cir. 2002)). In order to meet the administrative exhaustion requirement, an aggrieved employee must file a Charge of Discrimination with the EEOC within the limitations period defined by the ADEA. *See Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir. 1995) (citations omitted) ("This administrative deadline is not a jurisdictional prerequisite; rather, it is treated like a statute of limitations."); *see also Anderson v. Unisys Corp.*, 47 F.3d 302, 304 n.3 (8th Cir. 1995) (noting that the limitations period under the ADEA is 300 days for cases arising in Minnesota). The purpose of this process is to allow the EEOC an opportunity to correct alleged discrimination through a more informal process, it also functions to provide the employer notice of the claim, and it allows the EEOC to work with the parties toward voluntary compliance and conciliation. *See Parisi*, 400 F.3d at 585; *see also Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986) (citing H.R. Rep. No. 950, 95th Cong., 1st Sess. 12, reprinted in 1978 U.S. Code Cong. & Ad. News 504, 528, 534).

In this case, Plaintiff alleges in his proposed amended complaint that he filed a charge of discrimination with the EEOC on February 12, 2021. (Dkt. 46-1 at 3.) This is

the only reference to the exhaustion of administrative remedies.  As set forth above, Plaintiff's February 16, 2021 EEOC charge asserted that he had been "discriminated against on the basis of my race, black; national origin, Eritrea; and retaliated against for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Dkt. 12-1 at 1.)  He did not check the available box on the charge form that he had been discriminated against on the basis of age.  (*Id.*)  Given that the only EEOC charge alleged in the proposed amended complaint makes no reference to age discrimination, the proposed ADEA claim is futile for a failure to exhaust administrative remedies.

### 2. Whether the ADEA Claim was Adequately Pled

The ADEA prohibits employers from discriminating against employees on the basis of age if the employee is at least 40 years old.  *See* 29 U.S.C. §§ 623(a), 631(a).  An age discrimination claim has four prima facie elements: (1) the employee was a member of a protected age group, (2) the employee met the employer's legitimate expectations, (3) the employee suffered an adverse employment action, and (4) there are circumstances that give rise to an inference of discrimination based on age.  *See Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773 (8th Cir. 2016).

The Court acknowledges that Plaintiff has alleged that he was over 40 years old at the time of the alleged discrimination.  (Dkt. 46-1 at 5.)  However, outside of conclusory assertions of age discrimination, there are no facts alleged that any adverse action taken against him was based on his age.  (*See, e.g.*, Dkt. 46-1 ¶¶ 3(b), 18.)  Conclusory allegations of age discrimination are insufficient to state a ADEA claim for the purposes

of Rule 8 and the Court therefore denies the Motion to Amend as futile in the alternative.
*See Bad Wound v. Zinke*, No. 18-CV-0369 (WMW/ECW), 2019 WL 1060819, at *4 (D.
Minn. Mar. 6, 2019) ("Bad Wound alleges that he was 62 years old when he was
terminated, his employer was aware of his age when he was terminated, and he was
treated less favorably than similarly situated younger employees.  These conclusory
statements do not plausibly allege that Bad Wound met his employer's legitimate
expectations nor do they raise a reasonable inference of age discrimination.  Bad Wound
is required to do more than merely recite the elements of his claims.") (citation omitted).

## B.    Proposed Section 1981 Claim

"Section 1981 provides that, '[a]ll persons ... shall have the same right in every
State and Territory to make and enforce contracts . . .  as is enjoyed by white citizens.'"
*See Keefe v. City of Minneapolis*, 785 F.3d 1216, 1224 (8th Cir. 2015) (quoting 42 U.S.C.
§ 1981).  A federal action to enforce rights under § 1981 against a state actor may only be
brought pursuant to 42 U.S.C. § 1983.  *See Onyiah v. St. Cloud State Univ.*, 5 F.4th 926,
929 (8th Cir. 2021) (citations omitted).

The Eleventh Amendment generally bars suits for monetary damages against a
state, unless that immunity has been waived by the state or expressly abrogated by
Congress.  *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999).  An
agency of the state, such as MNIT, is entitled to the same Eleventh Amendment
immunity.  *See Grant*, 841 F.3d at 722 n.3 (8th Cir. 2016); *see also King v. Dingle*, 702
F. Supp. 2d 1049, 1069 (D. Minn. 2010) ("[T]he Eleventh Amendment bars actions, in
Federal Court, which seek monetary damages from individual State Officers, in their

official capacities, as well as State Agencies, because such lawsuits are essentially for the recovery of money from the state.") (citation omitted).  Courts within this District have previously concluded that the State of Minnesota has not waived its Eleventh Amendment immunity with respect to Section 1981 and 1983 claims, and that in enacting Sections 1981 and 1983, Congress did not make a clear statement of intent to abrogate states' Eleventh Amendment immunity.  *See Meyer v. Haeg*, No. 15-CV-2564 (SRN/HB), 2016 WL 11491390, at *24 (D. Minn. June 27, 2016), *R. & R. adopted*, 2016 WL 4153611 (D. Minn. Aug. 5, 2016), *order amended and superseded on other grounds by* 2016 WL 8671831 (D. Minn. Dec. 9, 2016); *Smith v. Fabian*, No. CIV. 10-2193 JRT/TNL, 2012 WL 1004982, at *3 (D. Minn. Mar. 26, 2012); *Stahl Const. Co. v. State of Minn.*, No. 03–3104, 2004 WL 742058, at *3 (D. Minn. March 4, 2004).  As such, the Court finds that Plaintiff's claim for monetary damages arising out of his proposed Section 1981 claim is futile.

While not addressed by either party, the Court acknowledges that the Eleventh Amendment does not bar prospective injunctive relief with respect to § 1981 and 1983 claims and that the bar for pleading such relief is not high.  *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).  Plaintiff seeks injunctive relief to remedy the wrongs alleged in his action, including promotion to an ITS5 position.[2]  (Dkt. 46-1 ¶ 16, Request for Relief ¶ 2.)  However, such claims are nevertheless futile, as argued by Defendant (Dkt. 49 at 11 n.3), because a Section 1983 suit asserting a Section 1981 claim

---

[2]     The Court notes that Defendant does not take issue with the adequacy of Plaintiff's allegations for injunctive relief.

cannot be brought against a state or a state agency, as agencies are not "persons" within the meaning of Section 1983. *See Alsbrook*, 184 F.3d at 1010 (citing *Will v. Michigan Dept of State Police*, 491 U.S. 58, 64 & 70 (1989)) ("We note first, that a section 1983 suit cannot be brought against the State or ACLEST.").

For the reasons stated forth above, the Motion to Dismiss with respect to Plaintiff's proposed Section 1981 claim is denied as futile.

## C.      Proposed State Law Claims

As stated previously, Plaintiff seeks to add claims under the Minnesota Human Rights Act ("MHRA"), the Minnesota Fair Pay Act, and the Minnesota Whistleblower Act ("MWA"). (Dkt. 46-1 at 2-3.)

### 1.      MHRA and MWA Claims

Defendant argues, in part, that these claims are barred by the Eleventh Amendment. (Dkt. 49 at 10.) This Court agrees. "[T]he Supreme Court has explicitly held that 'the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.'" *Powell v. Casey*, No. 20-CV-1142 (PJS/HB), 2021 WL 5310972, at *2 (D. Minn. Oct. 14, 2021), *R. & R. adopted*, 2021 WL 5310702 (D. Minn. Nov. 15, 2021), (quoting *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-41 (2002)) (citation omitted); *see also Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984)) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought. This

constitutional bar applies with equal force to pendent state law claims."). A "State 'is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" *Cooper*, 226 F.3d at 969 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985)).

Courts have concluded that Minnesota has not waived its Eleventh Amendment immunity with respect to adjudicating MHRA claims in federal court. *Id.* ("Cooper only argues that Minnesota waived SCSU's immunity from suit by including it within the definition of 'persons' liable to suit under the MHRA. However, a careful reading of the statute reveals that Minnesota only consented to suit in its own state courts. Under controlling Eighth Circuit precedent, the fact that Minnesota waived its immunity to suit in Minnesota's state courts is simply insufficient to waive its Eleventh Amendment immunity."). Similarly, courts have concluded Minnesota has not waived Eleventh Amendment immunity with respect to adjudicating MWA claims in federal court. *See*, *e.g.*, *Teachout v. Univ. of Minn.,* No. 09-2140 DWF/JSM, 2011 WL 916356, at *6 (D. Minn. Mar. 16, 2011) ("Teachout alleges that he was terminated in retaliation for his reports of conduct of the University that he believed to violate state laws and regulations, and that this termination violated the Minnesota Whistleblower Act, Minn. Stat. § 181.932, *et seq.* Similar to this Court's ruling above regarding the MHRA claim, the Court finds that Eleventh Amendment immunity immunizes the University from suit on this state law claim."); *McCormack v. Minn. Dept. of Commerce*, Civ. No. 10-CV-4135 (SRN/FLN), 2011 WL 753861, at *2 (D. Minn. Feb. 24, 2011) (citations omitted) ("The

statutory section she cites is the private right of action in the MHRA.  This section does not address, or purport to waive, the state's sovereign immunity as to MHRA or Whistleblower Act claims.  Absent a clear and explicit waiver of sovereign immunity as to the specific claims at issue, Plaintiff's MHRA and whistleblower claims against the Department must be dismissed."); *Cantu v. Muraski*, No. CIV.05-2629 (RJK/JJG), 2008 WL 151325, at *7 (D. Minn. Jan. 14, 2008).

Because this Court's jurisdiction over the MHRA and MWA claims would be barred by the Eleventh Amendment, the claims are futile and the Court denies the Motion to Amend as to these claims.

### 2.     Minnesota Fair Pay Act Claim

The Court also concludes that Plaintiff's Minnesota Fair Pay Act, as noted by Defendant (Dkt. 49 at 20), does not identify which statute he is relying on for this relief, which on its own is a basis for finding that the claim is futile.  As best as this Court can discern, Plaintiff may be referring to a Minnesota Equal Pay Act claim under Minnesota Statutes Section 181.67.  The Equal Pay Act provides in relevant part as follows:

> No employer shall discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate the employer pays to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to a seniority system, a merit system, a system which measures earning by quantity or quality of production, or a differential based on any factor other than sex.

Minn. Stat. § 181.67, subd. 1.

As argued by Defendants, Plaintiff did not allege any discrimination based on sex. (Dkt. 49 at 22.)  Indeed, where the proposed amended complaint sets forth the basis on which he was discriminated, he did not include gender as a basis for discrimination, even though it was included as an option.  (Dkt. 46-1 ¶ 9.)  Nor does the proposed amended complaint provide any assertion, let alone any supporting facts, that Plaintiff was paid a lower wage based solely on his sex for the purposes of Rule 8.  For these reasons, the Court denies the Motion to Amend to add a Minnesota Equal Pay Act claim because the claim as alleged is futile.  *See Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975, 985 (D. Minn. 1999)) ("Differences in wages are not unlawful in Minnesota if based on a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a wage differential based **on any factor other than sex.**") (emphasis added) (cleaned up).

## D.   Claim Under 18 U.S.C. § 216(b)

Defendant argues that any claim under Section 216(b) is futile because it is a criminal statute, since criminal statutes generally do not create a private cause of action. (Dkt. 49 at 19-20.)  Section 216(b) provides:

> The Attorney General may bring a civil action in the appropriate United States district court against any person who engages in conduct constituting an offense under section 203, 204, 205, 207, 208, or 209 of this title and, upon proof of such conduct by a preponderance of the evidence, such person shall be subject to a civil penalty of not more than $50,000 for each violation or the amount of compensation which the person received or offered for the prohibited conduct, whichever amount is greater. The imposition of a civil penalty under this subsection does not preclude any other criminal or civil statutory, common law, or administrative remedy, which is available by law to the United States or any other person.

18 U.S.C. § 216(b).  Sections 203, 204, 205, 207, 208, and 209 of Title 18 deal with federal officials, and have no bearing on Plaintiff's employment by a state agency.

"A criminal statute may provide an implied private right of action if Congress so intended in enacting the criminal statute."  *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999)  Courts consider four factors in determining whether a private right of action exists: (1) whether the plaintiff is a member of  the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law.  *Id.*  The statutes at issue here have no bearing on the alleged discrimination against Plaintiff and there is nothing in their text or legislative history indicating the Congress intended to create a private remedy.  As such, the Court concludes that there is no viable civil cause of action under Section 216(b) under the facts as alleged in the proposed amended complaint, making the proposed claim futile.  *See Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005) (finding no private cause of action under Section 216(b)).

Therefore, the Court denies Plaintiff's Motion to Amend as it relates to his proposed Section 216(b) claim.

**E.  Procedural Deficits and Additional Title VII Allegations**

Defendant argues that the entire Motion to Amend should be denied on the additional ground that Plaintiff failed to file a redline copy of the proposed amended complaint in violation of Local Rule 15.1.  (Dkt. 49 at 3-4.)  Defendant also asserts that

Plaintiff has alleged a number of additional facts and conclusory allegations based on

subsequent alleged events intended to bolster his previous Title VII claims.  (*Id.* at 22.)

Defendant takes the position that of those claims that survived its Motion to Dismiss,

none of the newly alleged facts should be permitted or considered because Plaintiff has

failed to exhaust his administrative remedies as to those claims, as the only relevant

EEOC charge in this matter was filed on February 16, 2021 and therefore does not

encompass any alleged charges or conduct subsequent to that date for purposes of

exhausting administrative remedies, making the allegations futile.  (*Id.*)

The Court first addresses Defendant's procedural arguments.  Local Rule 15.1

provides:

> Any motion to amend a pleading **must** be accompanied by: (1) a copy of the
> proposed amended pleading, **and** (2) a version of the proposed amended
> pleading that shows — through redlining, underlining, strikeouts, or other
> similarly effective typographic methods — how the proposed amended
> pleading differs from the operative pleading.

D. Minn. LR 15.1(b) (emphasis added).  The failure of a movant, even a *pro se* litigant, to

submit a redline copy of the proposed amended complaint as part of a motion to amend is

a basis for denial of the motion.  *See Mayard v. City of St. Paul*, No. 22-CV-143

(NEB/TNL), 2022 WL 1711770, at *1 (D. Minn. May 27, 2022) (citations omitted)

("Plaintiff has not submitted either a proposed amended complaint or the required

explanatory version, demonstrating how her proposed amended complaint differs from

the operative Complaint, ECF No. 1.  This alone warrants denial of Plaintiff's motion.");

*see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504-05 (8th Cir. 2013) (citations

omitted) ("We have repeatedly held that a district court does not abuse its discretion in

denying leave to amend when the party seeking leave has failed to follow procedural rules or failed to attach the proposed complaint."); *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("A district court does not abuse its discretion in denying leave to amend when a plaintiff has not submitted a proposed amended pleading in accord with a local procedural rule."); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.").

Regardless of his *pro se* status, Plaintiff must comply with the Local Rules for the District of Minnesota.[3]  *See Ernst v. Hinchliff,* 129 F. Supp. 3d 695, 726 (D. Minn. 2015) ("Notwithstanding Plaintiff's pro se status, Plaintiff is still bound to comply with the Local Rules of this Court.") (citation omitted).  Plaintiff has failed to follow Local Rule 15.1(b) by not filing a redline copy of the proposed amended complaint.  As such, the Court denies the entire Motion to Amend on this additional basis, as well as based on Plaintiff's failure to follow Local Rule 7.1 with respect to obtaining a hearing date before filing the Motion to Amend.

The Court also denies the Motion to Amend as to Plaintiff's proposed Title VII claims on substantive grounds.  As set forth previously (*supra* Section I.C), as best as this Court can discern, the proposed amended complaint adds allegations that Westgard gave Plaintiff a negative 2021 annual review sometime in September 2021 and blamed him for

---

[3]     A copy of the Local Rules can be found online at https://www.mnd.uscourts.gov/ court-info/local-rules-and-orders.

the inadequacies of other employees as a pretext to get him fired; Plaintiff was being told that the work he had performed was basic or that it could be done by a high school student; Plaintiff was a whistleblower as to "wasteful spending"; and Plaintiff's programs were intentionally sabotaged as a pretext to fire him.  While a charge of discrimination before the EEOC "need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Humphries v. Pulaski Cty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009) (marks and citation omitted)).  Therefore, the scope of an ensuing Title VII action is not necessarily limited to the specific allegations made in the EEOC charge.  *See Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998). Rather, "the sweep of the administrative charge is as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1216 (8th Cir. 2001) (internal quotation marks omitted) (*abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)).  However, any alleged discrimination or retaliation occurring after February 16, 2021, the date of Plaintiff's EEOC charge, is a separate and discrete unlawful practice for which Plaintiff must exhaust administrative remedies unless the conduct is reasonably related to the charge, and simply checking the "continuing violation" box on the EEOC charge is insufficient to plausibly allege a continuing violation.  *See Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1082 (8th Cir. 2021) (citations omitted).

Among other things, Plaintiff alleges that he was told his work was "basic" and that a high school student could do his work. (Dkt. 46-1 ¶¶ 87-88.) For reasons similar to those stated by Chief Judge Schiltz when concluding that denial of database access did not plausibly allege a Title VII claim (*see* Dkt. 27 at 7 n.5), the Court finds that Westgard's describing Plaintiff's work as "basic" or something a high school student could do fails to plausibly allege a harassment or hostile work environment claim, *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (to be actionable under Title VII, harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'") (citation omitted); *see generally, Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538-39 (8th Cir. 2020) (Eighth Circuit concluding that supervisor's "one instance of unwelcome physical contact [attempting to rub the female plaintiff's shoulders and saying he was going to give her a hug], one or two statements where [the supervisor] stated he could 'have [the female plaintiff],' and several statements about how he never should have hired a female and wanted to make [the female plaintiff] cry" did not meet the "high bar for conduct to be sufficiently severe or pervasive in order to trigger a Title VII violation"). Moreover, the only specific date provided for Westgard's comments about Plaintiff's work was March 27, 2021 (Dkt. 46-1 ¶¶ 87-88), after the February 16, 2021 EEOC charge. The Court finds that these allegations of harassment or a hostile work environment, even if they were actionable, are not within the scope of the February 2021 EEOC charge dealing with discrimination and retaliation. *See generally*, *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671-73 (8th Cir. 1994) (holding that harassment claims were not like or

19

reasonably related to plaintiff's discriminatory discharge claim alleged in the charge of discrimination).

Similarly, it is unclear when the claims of sabotage by a co-worker occurred, and in any event, such allegations of co-worker sabotage are not reasonably within the scope of the February 2021 EEOC charge. As to Plaintiff's allegations that he was retaliated against because he was a whistleblower, the Court has explained why his MWA claims (for retaliation or otherwise) are barred by Eleventh Amendment immunity in Section III.C.1.

Finally, the Court addresses Plaintiff's allegations surrounding the negative 2021 review he received from Westgard and its consequences. (Dkt. 46-1 ¶¶ 123-25, 129-30.) It appears this review occurred after the February 2021 EEOC charge, as the initial March 2021 Complaint asserted that Yohannes had not yet received his review and thus he would not have received the review at the time of his February 2021 EEOC charge (Dkt. 1 ¶ 270), while the proposed amended complaint alleges that the 2021 review blamed Plaintiff for problems created by another employee in September 2021 (Dkt. 46-1 ¶ 124).

Defendant characterizes the allegations relating to the 2021 annual review as "certain negative comments" rather than an adverse employment action. (Dkt. 49 at 14-15 & n.4.) Chief Judge Schiltz previously found that "Yohannes may go forward with his claims that he was discriminated against on the basis of his race and national origin when he was denied the opportunity to apply for a promotion in the spring of 2020 and when he was denied a timely annual review in 2021." (Dkt. 27 at 1; *see also id.* at 8

(explaining that "the only alleged adverse employment actions that are not time-barred are: (1) denial of the opportunity to apply for an open ITS5 position that was subsequently given to Stephen Walter and (2) delay or denial of an evaluation for a promotion, which will take place at Yohannes's annual review").)  Denial of a promotion constitutes an adverse employment action for purposes of Title VII, *see Watson v. McDonough*, 996 F.3d 850, 855 (8th Cir. 2021) (recognizing that being passed over for promotion opportunities can constitute an adverse employment action for the purposes of Title VII) (citation omitted), and the proposed amended complaint continues to allege the denial of the opportunity to apply for the ITS5 position given to Walter and denial of evaluation for a promotion by delaying Yohannes's 2021 annual review (Dkt. 46-1 ¶¶ 66-69, 84, 98-100).

However, as to the negative 2021 annual review (which appears to have taken place after September 2021), "a negative performance review on its own does not constitute an 'adverse employment action' . . . unless the review was relied on in making promotion decisions about the employee." *Rebouche v. Deere & Co.*,786 F.3d 1083, 1088 (8th Cir. 2015) (citation omitted).  The proposed amended complaint does not allege that the negative 2021 review is the reason why Yohannes has not been promoted to an ITS5 position.  Indeed, the only negative consequence of the 2021 review alleged by Yohannes is that he was not permitted to mentor junior programmers.  (Dkt. 46-1 ¶¶ 129-31.)  This consequence does not state a claim under Title VII, because an inability to mentor junior employees does not constitute an adverse employment action.  *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999) (holding that an

"evaluation [that] resulted in a loss of status or prestige without any material change in [the plaintiff's salary, position, or duties" did not constitute an adverse employment action); *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 994 (E.D. Mo. 2009) ("Plaintiff's unsupported assertion that the discipline 'has interfered with a vital responsibility of [her] career as a patent advocate and mentor to less experienced staff,' does not establish a material alteration in the terms of her employment.  As a result, the October 15, 2007 discipline cannot be considered an adverse employment action.") (citing *Cossette*, 188 F.3d at 972).  Because the inability to mentor junior programmers in the only alleged negative consequence of his 2021 annual review, Yohannes has not plausibly alleged an adverse action for the purposes of the Title VII claims based on that negative review.[4]  The Court therefore also denies the Motion to Amend insofar as Yohannes asserts claims of race and national origin discrimination under Title VII based on the 2021 annual review.

## VI.    ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**: Plaintiff's Motion to Amend the Complaint (Dkt. 46) is **DENIED**.

Date: July 15, 2022                    s/*Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge

---

[4]      The Court also notes that Plaintiff has not alleged, much less plausibly alleged, that the 2021 annual review was in retaliation for any protected conduct.